**UNITED STATES of America, Plaintiff,**

**v.**

**Angel PÉREZ–CASILLAS, Jaime Quiles-Hernández, Rafael Moreno-Morales, Rafael Torres-Marrero, Luis Reverón-Martínez, Juan Bruno-González, Nelson González-Pérez, William Colón-Berrios, Jose Ríos-Polanco, and Nazario Mateo-Espada, Defendants.**

**CR. 84–0070CC.**

United States District Court, D. Puerto Rico.

March 19, 1985.

See also 593 F.Supp. 794.

Daniel F. López-Romo, U.S. Atty., Gary H. Montilla, Asst. U.S. Atty., Federal Building, Chardón Avenue, Hato Rey, P.R., Stephen Clark, Criselda Ortiz, Atty. Civil Rights Div., U.S. Dept. of Justice Washington, D.C., for plaintiff.

Federico Delgado-Torres, Hato Rey, P.R., for defendant Pérez-Casillas.

Teodoro Méndez-Lebrón, Santurce, P.R., for defendant Quiles-Hernández.

William Arias, Río Piedras, P.R., for defendant Moreno-Morales.

Carlos M. Mangual-López, Hato Rey, P.R., for defendant Torres-Marrero.

José M. Ortiz-Miller, Hato Rey, P.R., for defendant Reverón-Martínez.

José C. Aponte, Hato Rey, P.R., for defendant Bruno-González.

José A. Torres-Martínez, Hato Rey, P.R., for defendant González-Pérez.

Gerardo Ortiz-del-Rivero, Federal Public Defender, David W. Román, First Asst. Federal Public Defender, Old San Juan, P.R., for defendant Colón-Berrios.

Francisco M. Dolz-Sánchez, Old San Juan, P.R., for defendant Ríos-Polanco.

Eduardo Caballero-Reyes, Hato Rey, P.R., for defendant Mateo-Espada.

## ORDER

CEREZO, District Judge.

The most recent evidentiary matter has been raised by defendant William Colón-

Berrios in his memorandum of law filed on March 15, 1985 urging the Court to allow evidence that Arnaldo Darío-Rosado and Carlos Soto-Arriví had a reputation for violence and aggression. Although couched in terms of testimony of *reputation* for violence, movant goes beyond the reputation form of proof contemplated in Rule 405(a) and into the method of proof by specific instances of conduct provided in the more restrictive framework of Rule 405(b), Federal Rules of Evidence. The government opposes *any* method of proof of character of these two persons basically contending that the offenses set out in the indictment are victimless crimes, thus making Rule 404(a)(2) inapplicable and that, even assuming this rule were to apply, evidence of their violent character is irrelevant for "*[a]ll* the evidence already in the record shows that the two men were the aggressors in the initial shootout." Addressing a possible 405(b) situation, it argues that "self defense is not an issue in this case."

To determine the relevance of character evidence in the factual context of this case, one must take into account the events that triggered the indictment and the circumstances surrounding those events. Those circumstances are extensively described in the multicount indictment. The paramount event, however, is the alleged brutal assault and illegal killing by police officers of Arnaldo Darío-Rosado and Carlos Soto-Arriví. This conspiracy and perjury prosecution begins and ends there. Whether you call the killing manslaughter, homicide or murder, the fact is that the illegal depriva-

tion of human life is the central issue of this case. The conspiracy charged is to conceal "that Arnaldo Darío-Rosado and Carlos Soto-Arriví had been unlawfully brutalized and killed by officers of the Police of Puerto Rico in the vicinity of the Channel 7 television tower at Cerro Maravilla in the Toro Negro area of Puerto Rico on July 25, 1978." [1] All of the perjury charges are based on alleged false versions of the killing given under oath by the several officers during depositions and before a grand jury. The United States requested and was allowed time and again to probe into the details of the scene of the killing and of the killing itself. The Court recognized that this was necessary to meet its burden of proof on the conspiracy and perjury counts. It was so stated in the order denying severance [2] and repeated throughout the government's case in chief upon ruling on objections raised by defendants on evidentiary matters. The United States was allowed to probe into the why, who, how, when and where of the killing itself in proving the charges. The defense was admonished that the United States could not meet its burden of proof by presenting this case in a vacuum. The Court now confronts the same attempts from the government that were made by the defense. They argue that the conspiracy and perjury offenses are "victimless" crimes.

One cannot read this indictment and still hold that the particular conspiracy and perjury charges filed in this case are victimless crimes. The indictment and the presentation of evidence by the government

---

**1.** Paragraph 2 of the conspiracy count which states the purpose of the conspiracy.

**2.** In our order of February 27, 1985 denying severance we said:

Although none of the defendants are charged with murder they are accused of conspiring to conceal a murder. The government cannot meet its burden and rest its case by merely proving that defendants combined and 'conspired to obstruct justice.' The underlying premise behind the charges described in the indictment requires proof that the government's version of how things happened is the true one. It must prove beyond a reasonable doubt that the events in Cerro Maravilla oc-

curred as it alleges they did occur and that all defendants knowingly conspired to hide this from the authorities conducting investigations. Proof of such events would have to be presented against each defendant even if each one were to be tried separately. Proof of the government's version of what occurred at Cerro Maravilla on July 25, 1978 is an essential trier in establishing the charges in this case against defendants whether tried separately or jointly. In our August 22, 1984 Order we clearly stated that the Cerro Maravilla scenario would have to be reenacted in this case. (Page 3)

during the past two weeks focus on one thing only: the brutal and illegal deprivation of human life. Carlos Soto-Arriví and Arnaldo Darío Rosado are undisputably portrayed as the victims of these defendants, charged as co-conspirators and as perjurers because in one way or another they are alleged to have been linked with the killings. The underlying, uncharged offense is the killings; the charged offenses the concealment and lying about those killings. The main question behind it all is whether the killing of Darío-Rosado and Soto-Arriví was a brutal and illegal killing or in self defense. The government must show that the first is the true version as opposed to the theory presented in deposition and grand jury testimony that the police acted to repel an aggression. In proving their theory the government cannot avoid depicting as victims the two persons allegedly killed while in a state of indefense, in custody and on their knees. And rightly so. But the government cannot do that and at the same time claim a victimless crime.

■ This, notwithstanding, the admissibility of character evidence of a victim under Rule 404(a)(2) depends, as all evidence must, on its relevance. The United States contends that "there is no issue in this case as to which evidence of the violent character of victims is relevant." [3] It also urges that all the evidence already in the record shows that Soto-Arriví and Darío-Rosado were the aggressors in the initial shootout and that there is no dispute that those defendants who were involved in the initial shootout acted *at that time* in self-defense. The flaw in this reasoning is that by adopting it the Court would be allowing the government to impose its view of the case on the defense with the concomitant restriction on the scope and force of the evidence. To begin with one cannot accurately state that *all* evidence of record shows the deceased as the aggressors. There was a remark to that effect by one of several key government witnesses.

There has been substantial evidence which could well cast doubt on that in the jury's mind. Again, if we were to adopt the argument that self-defense was a situation present *only* in the first shootout, the Court would, in effect, be cornering the defendants to develop their defense departing, not from their own theory of the case as reflected by their original version set forth in depositions and grand jury appearances, but from the government's own view of the facts. If the Court rules on questions of relevance and admissibility of evidence proffered by the accused taking into consideration only the evidence already admitted in support of the government's theory while disregarding the defendants' theory and the relevant issues flowing therefrom, the defendants would be bound by what the United States dictates is relevant.

The cases cited by the government in its brief involve factual situations which are totally different from ours. In *United States v. Kelley*, 545 F.2d 619 (8th Cir. 1976), there was no evidence proffered by defendant related to self-defense or justification and those issues were not before the Court. In *United States v. Housewright*, 568 F.2d 516, 519 (7th Cir.1977), the Court's ruling on the matter of the decedent's bad reputation was based on the fact that there was not "a shred of evidence to suggest that what happened was to any degree in self-defense, regardless of what a bad character the decedent may have been known to be." In the case before us the situation of self-defense, forms a part of the officers' version of what happened at Cerro Maravilla on July 25, 1978 and evidence of it is already before the finder of fact in the form of depositions and grand jury testimony given by defendants and presented in the case by the government itself, albeit to show that such versions were false and fabricated as compared to the version given by government witnesses that signal brutality and illegality.

**3.** Page 3 of its trial brief filed on March 15, 1985.

92

■ We find that the evidence of violent disposition or violent acts by the deceased are relevant on the issue, already raised, of self-defense and on the questions of whether or not they were the first aggressors, the likelihood that the deceased may have surrendered and the need for the defense measures taken by the defendants to confront them. The deceased themselves and their character are important elements to be considered in reconstructing the situation at the time of the killing. Needless to say, concerning a self-defense issue, a group of Boy Scouts is not the same as a group of Hell's Angels. If there is evidence such as the one offered by defendant William Colón-Berrios, it is relevant to the development of various aspects of their defenses and to the credibility of their version of how things happened.

■ Under the general and unlimited mandate of Rule 404(a)(2) and the broad definition of relevance in Rule 401, the defendants may introduce evidence in form of reputation or opinion testimony given by a witness with sufficient personal knowledge that the deceased were violent or dangerous persons. As to the form of proof by using specific instances of past conduct of the deceased to demonstrate their aggressiveness or dangerousness, the Court finds that it too can be properly utilized for these traits of the victims are pertinent and essential to an evaluation of the situation of self-defense claimed. Although the Court finds that Rule 405(b) means no proof ought to be allowed as having forceful probative value in support of· self-defense that substantially outweighs its prejudicial effect, precisely because of its potential for prejudice the Court will not allow presentation of specific instances of conduct ʻunless defendants first make a proffer out of the presence of the jury of such evidence in order to show a good faith basis and thus avoid the possibility of fabrication or false instances going before the jury.

SO ORDERED.